# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| MICROSTAR LOGISTICS LLC, | : |
| *Plaintiff/Counter Defendant,* | : Case No. 1:24-cv-647 |
| v. | : Judge Jeffery P. Hopkins |
| CAVALIER DISTRIBUTING COMPANY, *et al.*, | : |
| *Defendants/Counter Claimants.* | : |

## OPINION AND ORDER

Many breweries ("suppliers") enlist the help of key players like MicroStar Logistics LLC, and Cavalier Distributing Company, Cavalier Distributing Indiana LLC, and Cavalier Spirits LLC to provide beer and other alcoholic and nonalcoholic beverages to local bars and restaurants ("retailers") for consumption by their patrons. Plaintiff and Counter Defendant, MicroStar Logistics LLC ("MicroStar"), provides kegs to suppliers, while Defendants and Counter Claimants, Cavalier Distributing Company, Cavalier Distributing Indiana LLC, and Cavalier Spirits LLC (collectively, "Cavalier"), pick up filled kegs from suppliers and distribute those kegs to retailers. Empty kegs are then returned to MicroStar either by Cavalier or other distributers within the service area—the kegs are then cleaned, sanitized, stored, and eventually returned into circulation, prior to the whole cycle beginning anew.

Here, both parties refer to a keg deposit scheme—though each party presents a different version as to how the scheme works. A keg deposit, from the Court's understanding, is a refundable payment that safeguards against lost or damaged kegs. MicroStar alleges that Cavalier has been under a contractual obligation to pay these keg deposits upon receipt of

MicroStar kegs but has failed to do so—causing MicroStar a significant debt based on refunds that MicroStar itself has had to pay to other distributors, which operate in a similar way as Cavalier, when returning MicroStar kegs to them. Cavalier disputes these claims and alleges that it has been under no obligation to pay these deposits and thus does not owe MicroStar any past debt. After MicroStar sued to collect its alleged debt, Cavalier countersued asserting several counterclaims against MicroStar and now seeks injunctive relief on the basis that MicroStar is making false and misleading statements to suppliers in a coordinated effort to recover keg deposits that it claims (in the underlying complaint) Cavalier owes. Cavalier maintains that those statements are seriously damaging Cavalier's business and causing it irreparable harm.

For the reasons set forth below, the Court finds that Cavalier is entitled to temporary injunctive relief, the narrowed scope of which is outlined in this order. Accordingly, Cavalier's motion for a temporary restraining order (Doc. 10) is **GRANTED** and this order will remain in force and effect for 14 days, unless extended by agreement of the parties, or, for good cause shown, by further order of this Court pursuant to Fed. R. Civ. P. 65(b)(2).

### I.  LEGAL STANDARD

"A temporary restraining order is an extraordinary remedy that should only be granted if the movant can clearly show the need for one." *Kendall Holdings, Ltd. v. Eden Cryogenics LLC*, 630 F. Supp. 2d 853, 860 (S.D. Ohio 2008). To establish entitlement to relief under Rule 65, the movant must prove its case by clear and convincing evidence. *Hartman v. Acton*, No. 2:20-cv-1952, 2020 WL 1932896, at *2 (S.D. Ohio Apr. 21, 2020) (citations omitted).

In determining whether to issue a temporary restraining order, the court considers four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether

the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emples. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (citation omitted). These same factors apply to preliminary injunctions. *ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016) ("The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo.") (cleaned up). The first factor, likelihood of success, is not necessarily dispositive. *Frisch's Rest., Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1270 (6th Cir. 1985); *Ne. Ohio Coal. for Homeless & Serv. Emps. Int'l Union, Loc. 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006) ("These factors are not prerequisites that must be met, but are interrelated considerations that must be balanced together."). But if the movant's showing on that prong is lacking, preliminary equitable relief is permissible only if there are at least "serious questions going to the merits *and* irreparable harm which decidedly outweighs any potential harm to the defendant if [a TRO] is issued." *Frisch's Rest.*, 759 F.2d at 1270 (quoting *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 105 (6th Cir. 1982)).

In the end, the burden of persuasion is on the party seeking injunctive relief—here, Cavalier. *Stenberg v. Cheker Oil Co.*, 573 F.2d 921, 925 (6th Cir. 1978). Though Cavalier "must show more than a mere possibility of success," it need not "prove [its] case in full." *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 591 (6th Cir. 2012) (citing *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. 2007)).

## II. LAW AND ANALYSIS

Having set forth the applicable standard, the Court will now sequentially consider the factors that govern injunctive relief. Upon weighing all four factors, the Court finds that Cavalier has shown entitlement to a temporary restraining order. At this stage, the Court concludes that even if there are serious questions presented going to the merits of Cavalier's counterclaims, considerations for preserving the status quo and the potential for irreparable harm being visited upon Cavalier "decidedly outweighs any potential harm" to MicroStar if a temporary restraining order is issued. *Frisch's Rest.*, 759 F.2d at 1270.

### A. Likelihood of Success on the Merits

Cavalier asserts twelve counterclaims against MicroStar. Doc. 7. As part of its request for injunctive relief, Cavalier focuses on seven of those counterclaims. Addressing those claims, the Court concludes that Cavalier has, at the very least, shown a likelihood of success on violations of the Lanham Act (Count I), the Ohio Deceptive Trade Practices Act ("ODTPA") (Count V), Tortious Interference with Business Relationships (Count VIII), and Tortious Interference with Contracts (Count IX). Having found likelihood of success on these claims, the Court need not address Cavalier's remaining counterclaims at this juncture in the proceedings as those will be decided, if necessary, during the hearing on the preliminary injunction or at a consolidated trial on the merits under Fed. R. Civ. P. 65(a)(2).

#### i. The Lanham Act

Section 43(a) of the Lanham Act primarily concerns trademark protection. But the Act also "creates a cause of action for unfair competition through misleading advertising or labeling. Though in the end consumers also benefit from the Act's proper enforcement, the cause of action is for competitors, not consumers." *Pom Wonderful, LLC v. Coca-Cola Co.*, 573

4

U.S. 102, 104 (2014). In short, "[t]he Lanham Act prohibits a 'person' from using a 'false or misleading description' or 'representation of fact' in 'commercial advertising or promotion' that 'misrepresents the nature, characteristics, qualities, or geographic origin' of the person's or another's 'goods, services, or commercial activities[.]'" *Lewis v. Acuity Real Est. Servs., LLC*, 63 F.4th 1114, 1117 (6th Cir. 2023) (quoting 15 U.S.C. § 1125(a)(1)(B)).[1]

To succeed on a false-advertising claim, Cavalier must show: (1) MicroStar made a false or misleading statement of fact about Cavalier's products, services, or commercial activities or the equivalents of another; (2) the statement actually deceived or tended to deceive a substantial portion of the intended audience; (3) the statement is material in that it likely influenced the intended audience's purchasing decisions; (4) MicroStar introduced the advertisements or statements into interstate commerce; and (5) there is some causal link between the challenged statement and harm to Cavalier. *Campfield v. Safelite Grp., Inc.*, 91 F.4th 401, 411 (6th Cir. 2024) (citing *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 185 F.3d 606, 613 (6th Cir. 1999)). If the statement asserts a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact," and can be proved through "empirical verification," then it qualifies as a statement of fact. *FedEx Ground Package, Sys., Inc. v. Route Consultant, Inc.*, 97 F.4th 444, 453 (6th Cir. 2024) (citations omitted).

False statements are entitled to a presumption that the statement deceived its intended audience, so this is the preferred route for Lanham Act claimants. *Id.* A statement is "literally

---

[1] The Tenth Circuit has explained that "[a]lthough Congress did not define the term 'commercial activities' in the Act, the plain language meaning of that term encompasses 'commercial transactions' or all activities surrounding the peculiar 'commerce' of a company, defined as 'the exchange or buying and selling of commodities.'" *Procter & Gamble Co. v. Haugen*, 222 F.3d 1262, 1271–72 (10th Cir. 2000) (quoting Webster's Third New International Dictionary (Unabridged) 456 (1993)).

5

false" if it "is bald-faced, egregious, undeniable, over the top," *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500, 513 (7th Cir. 2009), and "conveys an 'unambiguously deceptive' meaning." *FedEx*, 97 F.4th at 453 (quoting *Wysong Corp. v. APN, Inc.*, 889 F.3d 267, 270 (6th Cir. 2018)). On the other hand, a misleading statement is "literally true, yet deceptive, or too ambiguous to support a finding of literal falsity[.]" *Am. Council*, 185 F.3d at 614. To succeed on a misleading statement, the movant must show that a "'significant portion' of reasonable consumers were *actually* deceived by the [opponent's] messaging." *Wysong*, 889 F.3d at 271 (quoting *Am. Council*, 185 F.3d at 616). Irrespective as to whether a statement is false or misleading, a challenged statements is not viewed in isolation; the statement must be viewed "in its entirety and in its 'full context.'" *FedEx*, 97 F.4th at 454 (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998)).

As part of a false-advertising claim, Cavalier must also demonstrate that MicroStar made the challenged statement "in commercial advertising or promotion." *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 798 (6th Cir. 2015). The Sixth Circuit has defined "'commercial advertising or promotion' as: (1) commercial speech; (2) for the purpose of influencing customers to buy the [opponent's] goods or services; (3) that is disseminated either widely enough to the relevant purchasing public to constitute advertising or promotion within that industry or to a substantial portion of the [movant's] or [opponent's] existing customer or client base." *Grubbs*, 807 F.3d at 801. Because the statute requires no showing that the parties are in direct competition, the Sixth Circuit has declined to impose such a requirement. *Id.*; *see also Lewis*, 63 F.4th at 1118–19 ("[A]s long as the [movant] sues for business or reputational harms, the [movant] need not be a 'direct competitor' of a false advertiser to assert a claim

6

against it.") (citing *Lexmark Int'l, Inc. v. Static Control Component, Inc.*, 572 U.S. 118, 136 (2014)).

Cavalier has set forth sufficient allegations to show likelihood of success on the merits related to its Lanham Act claim. In this instance, Cavalier alleges that MicroStar has made several false or misleading statements about its products, services, or commercial activities, including that MicroStar: (1) has told suppliers that Cavalier owes a large debt to MicroStar for keg deposits (up to $2 million); (2) has misled suppliers into thinking that Cavalier lost MicroStar's kegs; (3) has told suppliers that Cavalier refuses to pay its debts; (4) has told suppliers that Cavalier has refused to engage MicroStar in discussions with them to resolve this issue of kegs deposits going forward; and (5) has told suppliers that Cavalier's refusal to pay for kegs on an ongoing basis is forcing MicroStar to seek keg deposits from the suppliers going forward, when in Cavalier's view, MicroStar is doing nothing more than collecting the disputed past debt which is the subject of the underlying lawsuit. Doc. 13, PageID 179–80; Fisher Decl., Doc. 10-1, ¶ 21. When viewing these statements in their entirety and in full context, *FedEx*, 97 F.4th at 454, the Court finds that Cavalier has shown that a significant portion of suppliers may very well have been deceived by MicroStar's false statements or at the very least mislead by MicroStar's messaging.

MicroStar and Cavalier have been in business with each other for longer than a decade—more than fifteen years. Compl., Doc. 2, ¶ 33 ("As a wholesaler/distributer, Cavalier has been taking possession of MicroStar Kegs since 2009, and its relationship expanded when MicroStar acquired Keg Craft in 2015."). At no time during this extended period have the parties ever operated under an express or written contract. Yet now, after being in business with each other for fifteen years, MicroStar alleges that Cavalier is responsible for a *past* debt

7

based on implied-in-fact and implied-in-law contract principles. Compl., Doc. 2, ¶ 68–83. At first blush, it appears that MicroStar may face an uphill battle in obtaining relief on those claims. Representing otherwise to the suppliers is, at best, misleading and quite possibly an outright fabrication when there are significant questions of law and fact as to whether Cavalier is contractually obligated to pay any of the debt that MicroStar believes it is owed.

Now, this is not to say that MicroStar is not within its rights to assert these claims. Nor does it reflect that this Court believes that the claims MicroStar has asserted in its complaint are frivolous or without merit. MicroStar has the prerogative to seek redress in this Court and is exercising that right by bringing this lawsuit against Cavalier. But the Court cannot help questioning MicroStar's motives for now seeking the keg deposits from suppliers when it has refused, what appears on its face to be, Cavalier's sincere attempts to enter into an express or written contract for governing all future keg deposits between the parties. Fisher Decl., Doc. 10-1, ¶ 17–18. Not only would this obviate the need for MicroStar to recover those deposits from suppliers, but it would streamline this litigation to address solely the *past* debt believed to be owed. But alas, Cavalier alleges that MicroStar refuses to engage about future keg deposits with MicroStar unless or until the issue of the alleged past debt is resolved—a position this Court finds unreasonable under the circumstances.

Further, there is evidence that suggests that because of statements and representations MicroStar has made about Cavalier to others in this industry, some suppliers have been led to believe that Cavalier does in fact owe MicroStar an unpaid debt. *See e.g.*, Eberly Decl., Doc. 13-1, Ex. A-1, A-2. On this score, Cavalier has proffered evidence showing that MicroStar's statements about them have negatively influenced certain suppliers' decisions with respect to their business with Cavalier. In light of MicroStar's attempts to collect keg deposits from

suppliers on Cavalier's behalf, some suppliers have clearly begun to pump the brakes on their business with Cavalier, and at least one supplier has elected to withhold business from it—lending to a causal link between the statements that MicroStar has made and the harm that Cavalier has alleged. It is axiomatic that the statements MicroStar has made concerning Cavalier have been introduced into interstate commerce and found their way into the offices of the decision makers for a substantial portion of the suppliers with whom Cavalier works. *Campfield*, 91 F.4th at 411; *Grubbs*, 807 F.3d at 801; Fisher Decl., Doc. 10-1, ¶ 19 ("MicroStar began interfering with [Cavalier's] franchise suppliers in the States of Ohio, Indiana, and Florida…"). Cavalier has therefore shown likelihood of success on its claim against MicroStar under the Lanham Act.

### ii. The ODTPA

A claim under the ODTPA is treated the same as a claim for false advertising under the Lanham Act. Thus, because Cavalier has shown a likelihood of success under the Lanham Act, the same is true under the ODTPA. *Stilson & Associates, Inc. v. Stilson Consulting Grp., LLC*, 129 F. App'x 993, 994 (6th Cir. 2005) ("The standard applicable to Lanham Act claims governs Plaintiffs' . . . claims under the Ohio Deceptive Trade Practices Act . . . .") (internal citations omitted); *Worthington Foods, Inc. v. Kellogg Co.*, 732 F. Supp. 1417, 1431 (S.D. Ohio 1990) ("[A]n analysis appropriate for a determination of liability under section 43(a) of the Lanham Act is also appropriate for determining liability under the [ODTPA].")

### iii. Tortious Interference

Ohio law recognizes separate causes of action for tortious interference with business relationships and tortious interference with contracts. *Super Sulky, Inc. v. United States Trotting Ass'n*, 174 F.3d 733, 741 (6th Cir. 1999). To prevail on a claim for tortious interference with

a business relationship, the movant must show: (1) the existence of a business relationship; (2) that the opposing party knew of the relationship; (3) that the opposing party intentionally and materially interfered with the business relationship; (4) without justification; and (5) caused the movant to suffer damages. *Stolle Mach. Co., LLC v. Ram Precision Indus.*, 605 F. App'x 473, 485 (6th Cir. 2015) (citing *Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1102 (6th Cir. 2012)). The required elements of the tortious interference claims at issue here are nearly identical with "the main distinction being 'that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract,'" while tortious interference with a contractual relationship requires just that—a contract be at the root of the claim. *Georgia-Pacific*, 701 F.3d at 1102 (quoting *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 2002-Ohio-3932, ¶ 23 (3d Dist.)).

Cavalier has set forth sufficient allegations to show likelihood of success on its tortious interference claims. Cavalier has shown that it has business relationships and contractual franchise relationships with suppliers, and there is no question that MicroStar is aware of Cavalier's business and contractual relationships with the suppliers based on the nature of the distribution business, the parties' respective roles in that business, and the facts underlying the parties' respective claims and counterclaims. Beyond this, Cavalier has offered evidence that MicroStar has and continues to intentionally and materially interfere with those relationships by making certain representations to suppliers about Cavalier's alleged refusal to pay keg deposits. Fisher Decl., Doc. 10-1; Eberly Decl., Doc. 13-1. As such, Cavalier has demonstrated a direct causal relationship between MicroStar's representations and certain suppliers' decisions to withhold or reconsider its business with Cavalier. *See e.g.*, Eberly Decl.,

Doc. 13-1, A-1, A-3. If it turns out that Cavalier does not have an obligation to pay the debt that MicroStar alleges is owed, then MicroStar's interference is unjustifiable—especially given Cavalier's willingness to work out a deal regarding keg deposits on a forward basis. Further, as discussed in the next section, Cavalier has offered sufficient evidence to establish that it has suffered damages as a result of MicroStar's tortious interference. Thus, Cavalier has shown a likelihood of success on the merits of its claims for tortious interference with business relationships and tortious interference with contracts.

### B. Irreparable Harm

Harm is irreparable if it "is not fully compensable by monetary damages," *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 578 (6th Cir. 2002), or "if the nature of the [] loss would make damages difficult to calculate." *RGIS, LLC v. Gerdes*, 817 F. App'x 158, 163 (6th Cir. 2020) (citation omitted). Irreparability of harm is said to be an a "indispensable" factor because, absent irreparable harm, "there's no need to grant relief *now* as opposed to at the end of the lawsuit." *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 327 (6th Cir. 2019); *see id.* at 326–27 ("[E]ven the strongest showing on the other three factors cannot 'eliminate the irreparable harm requirement.'") (citation omitted). Thus, to show entitlement to injunctive relief, the movant's injury "must be both certain and immediate, not speculative or theoretical." *Id.* at 327 (cleaned up).

Here, because Cavalier has shown a likelihood of success on the merits of its Lanham Act claim, Cavalier is entitled to a rebuttable presumption of irreparable harm. 15 U.S.C. § 1116(a) ("A [party] seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation" of the Lanham Act). MicroStar has not only failed to rebut that presumption, but Cavalier

11

has independently established that it will suffer certain and immediate harm should MicroStar continue to make representations to its suppliers deleterious to its business, at least until the merits of the alleged debt—predicated on the implied-in-fact and implied-in-law contract claims MicroStar has penned—can be resolved in the underlying litigation.

Specifically, Cavalier has shown that it will suffer irreparable harm through damage to goodwill and statutory franchise relationships. Cavalier's position draws support from *Southern Glazer's Distribs. Of Ohio, LLC v. Great Lakes Brewing Co.*, 860 F.3d 844, 853 (6th Cir. 2017). In that case, the Sixth Circuit considered whether a distributor would suffer irreparable harm if it lost its franchise relationship with a key manufacturer. There, the court explained that when a distributor loses an in-demand product, like a particular manufacturer's beers, "it threatens their relationship with the retailers that have come to rely on the distributor for the in-demand product." *Id.* The court added that a loss of customer goodwill "is a prime example of intangible, irreparable harm." *Id*. *See also Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to calculate.").

Cavalier stands to lose several suppliers as a result of MicroStar's conduct. And that number may only grow as MicroStar continues to send invoices to suppliers throughout the billing cycle—which Cavalier claimed, without objection, is in mid-cycle currently, thus increasing the threat of irreparable harm to its business. Cavalier has provided evidence that suppliers have, or are considering, withholding kegs from Cavalier based on representations that MicroStar has made about Cavalier in relation to keg deposits. Eberly Decl., Doc. 13-1, Ex. A-1, A-3, A-4. Other suppliers have also contacted Cavalier to discuss "potentially concerning" information from MicroStar or invoices that they have received from MicroStar

for "unpaid deposits." *Id.* at Ex. A-2, A-3. Cavalier represents that the harm will only become more palpable as other suppliers receive invoices and express concern to—or worse, withhold business from—Cavalier. Loss of certain suppliers would, as in *Great Lakes*, likely impact Cavalier's relationship with retailers well into the future. *See Hill Distrib. Co. v. St. Killian Importing Co.*, No. 2:11-cv-706, 2011 WL 3957255, at *4 (S.D. Ohio Sept. 7, 2011) (recognizing a distributor's "concern[] that the loss of [the manufacturer's] brand may have a spillover effect, as customers could start to look to other distributors to satisfy all of their needs"). Cavalier has thus shown that it will suffer certain and immediate harm absent injunctive relief.

### C. Harm to Others

The third prong requires an equitable balancing of harms. This means that the Court must consider any harm that MicroStar or other third parties might suffer by the granting of injunctive relief. *Total Quality Logistics, LLC v. Traffic Tech, Inc.*, 2021 WL 5834299, at *8 (S.D. Ohio Dec. 8, 2021) (quoting *Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 568 (6th Cir. 1982)). MicroStar places significant emphasis on the impact that an injunction would have on its First Amendment rights. Beyond this, MicroStar alleges that if enjoined, it will be unable to enforce its contracts with the suppliers and will therefore be harmed by an inability to recover keg deposits while also paying keg deposits to other distributors. There is no sign that the requested injunctive relief would harm third parties.

First, at its core, commercial speech is "speech which does 'no more than propose a commercial transaction.'" *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (quoting *Pittsburgh Press Co. v. Hum. Relations Comm'n*, 413 U.S. 376, 385 (1973)). Because the Lanham Act regulates commercial speech and that speech is entitled to

13

lesser protections under the First Amendment, MicroStar cannot successfully argue that the relief sought by Cavalier would constitute a prior restraint in violation of MicroStar's First Amendment rights. *Taubman Co v. Webfeats*, 319 F.3d 770, 774 (6th Cir. 2003) (citing *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 663 (1980) (stating that regulation of commercial speech is subject only to intermediate scrutiny)); *see also Va. State Bd. of Pharmacy*, 425 U.S. at 771 (stating that misleading commercial speech is not protected by the First Amendment); *Zauderer v. Off. of Disciplinary Counsel of Sup. Ct. of Ohio*, 471 U.S. 626, 638 (1985) ("The States and the Federal Government are free to prevent the dissemination of commercial speech that is false, deceptive, or misleading . . . ."). So long as "an injunction restraining allegedly false or misleading speech [is] narrowly tailored to 'cover only the speech most likely to deceive consumers and harm [the movant],'" such an injunction will not flout the First Amendment, nor harm MicroStar in this way. *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 598 (3d Cir. 2002) (quoting *ALPO PetFoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 972 (D.D.C. Cir. 1990)).

    The rest of MicroStar's alleged harms are economic harms recoverable pursuant to the allegations asserted in its complaint. *See e.g., Hanuman Chalisa, LLC v. BoMar Contr., Inc.*, 2022-Ohio-1111, ¶ 25 (10th Dist.) ("Expectation damages generally place the non-breaching party in the position it would have been in had the contract been fully performed.") Balancing MicroStar's harms against those that Cavalier would suffer absent injunctive relief, this Court finds that this prong strongly favors Cavalier. MicroStar has been operating under the complained-of conditions for more than fifteen years. Any other economic harm would be negligible. Further, to offset any potential economic harm to MicroStar, counsel for Cavalier has represented that Cavalier will pay security under Fed. R. Civ. P. 65(c) in an amount

consistent with the number of MicroStar kegs that Cavalier reasonably expects to distribute while any injunction remains in effect. This is enough to mitigate the harms alleged by MicroStar.

### D. Public Interest

The final factor in the injunctive relief analysis is whether granting the injunction would serve public interest. A temporary restraining order "is in the public interest whenever a [party] has established a reasonable likelihood of establishing that the [opposing party] has engaged in false advertising in violation of the Lanham Act," *Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 519 F. Supp. 3d 839, 856 (D. Or. 2021), because the "Lanham Act is itself a public interest statute intended to protect the consuming public and competitors from false and deceiving statements which a company chooses to utilize in advertising its goods or services." *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1242 (D. Ariz. 1981), *aff'd*, 681 F.2d 1159 (9th Cir. 1982). Thus, granting injunctive relief here to ensure that suppliers are receiving accurate information from MicroStar serves the public interest. *Lexmark*, 572 U.S. at 129.

### III. CONCLUSION

Having carefully considered each of the relevant factors, the Court finds that on balance all of them weigh in favor of Cavalier. And even if Cavalier's showing on the first prong is slightly lacking, Cavalier has demonstrated the existence of serious questions going to the merits and that the irreparable harm it stands to suffer outweighs any potential harm to MicroStar if a temporary restraining order is issued. *Frisch's Rest.*, 759 F.2d at 1270. Thus, Cavalier's motion for a temporary restraining order (Doc. 10) is **GRANTED.** It is therefore **ORDERED** that MicroStar be and hereby is temporarily restrained and enjoined from:

Contacting suppliers, distributors, and retailers that have a relationship or prospective business relationship with Cavalier and engaging in a manner that is false, deceptive, or misleading, <u>for the purpose of</u>: (a) discussing the debt at issue in this case; (b) disparaging Cavalier; (c) encouraging their participation in the collection of the debt; (d) attempting to collect the debt through these entities; (e) asserting that MicroStar has a right to collect a prior debt through its relationships with the entity; and (f) asserting pressure and influence to collect the debt which involves Cavalier and these entities.

This temporary restraining order will remain in force and effect for 14 days, unless extended by agreement of the parties, or, for good cause shown, by further order of this Court pursuant to Fed. R. Civ. P. 65(b)(2). In accordance with Fed. R. Civ. P. 65(c), Cavalier is **ORDERED** to post security in an amount consistent with the number of MicroStar kegs that Cavalier reasonably expects to distribute from the date of this Opinion and Order until the date of the Preliminary Injunction Hearing, which is set for **April 22, 2025**.

**IT IS SO ORDERED.**

March 14, 2025

Jeffery P. Hopkins
United States District Judge